Robert C. MULLINS, d/b/a Clinton Texaco, Edward D. Stokes, d/b/a Ed's Skyline Texaco, Frank Stone, d/b/a Frank Stone & Son's, Rudy Thomas, d/b/a Rudy's Texaco Service, Individually and as Representatives of the Class of Purchasers of Texaco, Inc. Refined Petroleum Products from January 1, 1973 through January 27, 1981, who were overcharged in violation of the Federal Petroleum Price & Allocation Regulations, Plaintiffs–Appellants,

v.

UNITED STATES DEPARTMENT OF ENERGY, James Watkins, Secretary, U.S. Department of Energy, Office of Hearings and Appeals, U.S. Department of Energy, George B. Breznay, Director, Office of Hearings and Appeals, U.S. Department of Energy, Economic Regulatory Administration, U.S. Department of Energy, Paul M. Geier, Administrator, Economic Regulatory Administration, U.S. Department of Energy, Defendants–Appellees.

No. 6–40.

Temporary Emergency Court of Appeals.

April 20, 1992.

Len W. Ogden, Jr., Paducah, Ky., and Roger Wm. Perry of Long & Perry, Benton, Ky., for plaintiffs-appellants.

Don W. Crockett and Thomas W. Sacco, Judicial Litigation Div., Economic Regulatory Admin., U.S. Dept. of Energy, Washington, D.C., and Joseph M. Whittle, U.S. Atty., Louisville, Ky., for defendants-appellees.

Before GARZA, Chief Judge, and CHRISTENSEN and DAUGHERTY, Judges.

PER CURIAM:

The Plaintiffs–Appellants, Robert C. Mullins, d/b/a Clinton Texaco; Edward D. Stokes, d/b/a Ed's Skyline Texaco; Frank Stone, d/b/a Frank Stone & Son's; and Rudy Thomas, d/b/a Rudy's Texaco Service, filed a Complaint against the Defendants alleging that the actions of the Department of Energy ("DOE") in allocating only $120,000,000 to the Texaco Refined Products Sales Refund Pool from the Texaco consent order deprived the Appellants of their property in violation of the Fifth Amendment and DOE's regulations, particularly 10 CFR Part 205, Subpart V.

The Defendants filed a Motion to Dismiss the Plaintiffs' Complaint in July 1990, alleging that the Plaintiffs' claims were not ripe for review. The district court granted the Defendants' Motion to Dismiss on the grounds of ripeness in April 1991. The Plaintiffs–Appellants appeal from that ruling of the district court, with the only issue on appeal being whether the district court correctly held that the Plaintiffs' claims were not ripe for judicial review.

The underlying facts of the case are as follows: Prior to 1988, the DOE conducted an audit pursuant to its authority under the Emergency Petroleum Allocation Act to determine Texaco's compliance with mandatory price allocation regulations. Following extensive settlement negotiations, the DOE and Texaco entered into a consent order which resolved all disputes regarding Texaco's compliance with the regulations. Pursuant to the consent order, Texaco was required to remit 1.25 billion dollars to the DOE. The consent order provided that the sum of 1.198 billion was to be distributed to injured parties by the DOE's Office of Hearings and Appeals ("OHA") pursuant to its Subpart V regulations.

In Subpart V proceedings, where the consent order resolves the alleged violations of both sales of crude oil and refined petroleum products, the OHA establishes both a crude oil pool and a refined products pool for distribution to those claiming injury. Prior to the consent order being entered into, the DOE's Economic Regulatory Administration ("ERA") had determined that Texaco's maximum possible liability was $2,174,000,000, which included $1,826,000,000 for crude oil and $348,000,000 for refined products. Thus, the liability for refined products sold was approximately 16 percent of the total liability. The later OHA decision under Subpart V with respect to the sizes of the respective crude oil and refined product pools resulted in a determination that $1,130,000,000 would be deposited into the crude oil pool and that $120,000,000 would be deposited into the refined products pool. As a result, the amount ultimately deposited into the refined products pool comprised only 10 percent of Texaco's total liability under the consent order.

Refunds from the refined products pool are calculated by what is termed a "volumetric" approach. An individual's share of the refund products pool is equal to the number of gallons purchased during the period in question, multiplied by the per-gallon refund amount. The per-gallon refund amount, which is referred to as the "volumetric," is calculated by dividing the consent order funds allocated to the refined products pool, in this case $120,000,000, by Texaco's estimate of the approximate total number of gallons of petroleum products which it sold during the period of federal price controls, in this case 105,590,045,356. Thus, the volumetric amount in this case would be fixed at .0011 per gallon.

The Plaintiffs, all of whom have made claims for refunds, are owners of service stations in western Kentucky who purchased refined products from Texaco during the period in question. In their lawsuit, the Plaintiffs claimed that the allocation of only $120,000,000, which was 10 percent, to the refined products sales pool, instead of the 16 percent amount found by the ERA, violated the Plaintiffs' Fifth Amendment rights, in that they were deprived of their property without due process of law. The Plaintiffs urge that the allocation also violates 10 CFR Part 205, Subpart V, § 205.282(e), in that the refunds were not distributed in an efficient, effective and equitable manner.

As has been stated, the DOE moved to dismiss the Plaintiff's Complaint for lack of ripeness, urging that no direct and immediate harm had been alleged and that any hypothetical harm to the Plaintiffs in the future was purely speculative. The district court granted the Motion to Dismiss on the grounds that because the Plaintiffs had not shown that the refined products pool might be inadequate to satisfy their claims and because none of the Plaintiffs had been found to be eligible to receive any refunds in any event, the Plaintiffs' claims were premature.

■ On appeal, the Appellants urge that the district court erred in determining that

it lacked subject matter jurisdiction over their claims because the court misinterpreted their cause of action. The Plaintiffs allege that their complaint was not that the refund pool would be inadequate to satisfy all claims. The Plaintiffs acknowledge that such a claim should properly be dismissed for lack of ripeness. Rather, it is the Plaintiffs' position that the basis of their Complaint is that the amount allocated to the pool should have been 16 percent of Texaco's liability under the consent order as determined by ERA, which amount would have been at least $200,000,000 instead of $120,000,000. Because the amount of the refined products pool is one of the factors in the volumetric, a lower pool would obviously result in a smaller volumetric and a smaller refund for the Plaintiffs. The Plaintiffs urge that once the refined product pool amount is determined, the volumetric can be fixed and the amount of the Plaintiffs' refund can be determined with certainty. Thus, the damages are not speculative and the claim is clearly ripe.

In response, the Appellees assert that the district court did not misperceive the Plaintiffs' Complaint and correctly held that the Plaintiffs' claims were not ripe for judicial review under the doctrines enunciated in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The Appellees do, however, acknowledge that if the issues in the Plaintiffs' original Complaint had been framed as the Plaintiffs have now framed the issues on appeal, the Plaintiffs would have stated a valid claim that is ripe for resolution.

After a review of the Plaintiffs' Complaint in the district court and the district court's Memorandum Opinion and Order granting the Defendants' Motion to Dismiss, this Court has determined that the district court erroneously concluded that the Plaintiffs' claims were not ripe for judicial review and that such decision should be reversed. We find that the Plaintiffs' Complaint does adequately set forth the elements of their present cause of action, although more clarity could have been achieved by additional discussion concerning the calculation and effect of the volumetric. Certainly, the Plaintiffs' recitation of their cause of action before this Court is more clearly stated than was their original Complaint before the district court. Nonetheless, we find the district court's dismissal of the Plaintiffs' Complaint on ripeness grounds to be erroneous.

In its Memorandum and Order dismissing the Plaintiffs' Complaint, the Court stated in part as follows:

> "[D]espite Plaintiffs' protestations that their objection is to OHA's procedure, not to the size of the pool, the only way harm can result is if the procedure resulted in a pool that is too small to fairly compensate all claimants. Claims that the pool is too small are, as Plaintiffs reluctantly admit, not ripe.

> Despite Plaintiffs' efforts to distinguish this case from one attacking the size of the pool, the distinctions Plaintiffs attempt to make are of no significance. At best, Plaintiffs' characterization of their Complaint amounts to no more than [sic] the contention that others, i.e., claimants to the crude oil pool, may be more favorably treated in the future than are claimants to the refined products pool. However, that is no more ripe than a claim that the refined products pool is simply not large enough to satisfy all claims."

We find that the district court's interpretation of the Plaintiffs' Complaint as being only an attack on the size of the pool to be erroneous. As the above quotation indicates, the district court was aware of the Plaintiffs' argument that their objection was to the calculation of the volumetric amount, but the Court nonetheless determined the Plaintiffs' Complaint to be defective for lack of ripeness. We reverse the district court on this issue.

The Appellees have urged this Court to decide the merits of the case at this time rather than remanding the case to the district court for further proceedings on the grounds that it would be in the interest of justice to consider the underlying issue now rather than later. The Appellees assert that the issue presented, whether or not OHA's decision to allocate 10% rather

than 16% to the refined products pool had a rational basis, is a pure question of law not requiring further analysis by the district court.

■ It is well established that a federal appellate court does not generally consider an issue not passed upon below. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). In addition, this Court has held that "[w]hen appellate courts reverse a lower court's holding that standing does not exist, they routinely remand the case back to the lower court for consideration of the merits." *Highland Petroleum, Inc. v. U.S. Department of Energy*, 798 F.2d 474 (TECA 1986). This Court followed that general rule in *Highland* and remanded the case to the district court, stating that "[o]n the record before us, it does not appear that proper resolution of the issues is 'beyond any doubt,' or that the issues must be resolved now to avoid injustice." *Highland*, 798 F.2d at 481, citing *Singleton*, 428 U.S., at 121, 96 S.Ct. at 2877.

■ Despite the Appellee's assertions to the contrary, this Court is of the opinion that the same result should be reached in the case at bar. The record in this case is such that the resolution of the question of whether the OHA's allocation had a rational basis may not be determined 'beyond any doubt.' A remand in this case will allow the parties to make a more complete and thorough record concerning the contested allocation and the reasons for that allocation from which the district judge can make the initial determination as to whether such allocation had a rational basis. Such ruling of the district court will then be subject to review by this Court.

As a result, we decline the Appellee's invitation to decide the merits of the case at this time, and believe that the more appropriate course of action would be to remand this case for full consideration of the merits by the district court.

**REVERSED AND REMANDED.**